

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CLARENCE M. TROTTER, | ) | |
| | ) | 06-3019-TC |
| Plaintiff | ) | Civil No. ~~06-128-TC~~ |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE[1] | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

COFFIN, Magistrate Judge:

Plaintiff Clarence M. Trotter seeks judicial review of the Social Security Commissioner's

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

1 - FINDINGS AND RECOMMENDATION

final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend this action be reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Trotter was 39 years old at the time of his hearing and reports completing high school. Tr. 18, 93.[2] Between 1988 and 1997 Trotter reports work as a forest firefighter, gas station attendant, roofer, maintenance technician, assembly worker, landscaper, ditch digger, and mill sasher. Tr. 120.

Trotter alleges disability since August 21, 2001, due to a schizophrenia and bipolar disorder. Tr. 87. His claim was denied initially and upon reconsideration. Tr. 48-52, 53-55. Two hearings were held before an Administrative Law Judge ("ALJ") in September 2004 and January 2005. Tr. 262-94, 295-332. The ALJ issued an unfavorable decision on April 29, 2005. Tr. 17-24. The Appeals Council denied review on February 1, 2006, making the ALJ's decision final. Tr. 6-8. Trotter seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920, *Bowen v. Yuckert*, 107 S.Ct. 2287, 2291 (1987). Each step is potentially dispositive. *Id.* Trotter challenges the ALJ's evaluation of the evidence and his conclusion at step four.

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 17, 2006 (Docket #7).

2 - FINDINGS AND RECOMMENDATION

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four or work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 107 S.Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.966, 416.920(g).

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Trotter's polysubstance abuse and "schizophrenia/schizoaffective" disorder severe at step two in the sequential proceedings, but found that they did not meet or equal a listing at step three. Tr. 23. The ALJ found that Trotter's "allegations regarding his limitations are not totally credible." *Id.* The ALJ assessed Trottert's RFC, finding, "the claimant has no exertional limits. However, the claimant's mental impairments limits [sic] him to unskilled, simple, repetitive work, that does not involve interaction with the public. " *Id.*

Drawing upon a vocational expert's testimony, the ALJ subsequently found that Trotter's RFC allows him to perform his past relevant work at step four. Tr. 22-23. The ALJ therefore found Trotter not disabled. Tr. 23-24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## **DISCUSSION**

Trotter contends the ALJ arrived at an inaccurate RFC assessment because he accorded excessive weight to a reviewing physician, failed to develop the medical record, improperly rejected lay witness observations, and incorrectly assessed his past relevant work.

### I.    Medical Record

The medical record shows that Trotter received treatment from his general physician for what was characterized as schizophrenia beginning in December 1998. Tr. 139. Jackson County Mental Health ("JCMH") records show that Trotter received intermittent treatment between December 1997 and an unspecified date in1998, and between March and September 2004. Tr. 208-31, 235-45. JCMH psychiatrist Dr. Collier assessed history of methamphetamine and marijuana dependence, "psychosis, not otherwise specified," and an antisocial personality disorder in December 1997. Tr. 221.

Between March and September 2004 JCMH psychiatrist Dr. Dempsey treated Trotter on three occasions. Dr. Dempsey commented, "It appears that his symptoms are not as severe now as they were several years ago and this may be in part related to his antipsychotic use over the last several years and also the fact that he is not using drugs to the extent he was previously." *Id.* In September 2004 Dr. Dempsey concluded, "The diagnosis remains unclear, but it appears to be in the schizophrenia or schizoaffective spectrum." Tr. 247.

Psychiatrist Dr. Sasser evaluated Trotter in conjunction with an earlier SSI application in June 2000. Tr. 141-46. Dr. Sasser noted that Trotter reported hypomanic symptoms of a bipolar disorder under the influence of methamphetamines only. Tr. 144. Dr. Sasser included Trotter's

5 - FINDINGS AND RECOMMENDATION

substance abuse history, in his findings, and concluded:

> His description of hallucinations and the absence of any formal thought disorder and without any systematized delusional belief system suggests he does not suffer from schizophrenia as he was, unfortunately, told. He may have a residual auditory hallucinosis from various substance[s] he has taken in the face of increased anxiety in social settings.

Tr. 146.

Dr. Sasser subsequently assessed a social phobia and "polysubstance related disorder." *Id.* He found "insufficient information for personality disorder diagnosis." *Id.*

In January 2002 clinical psychology resident Dr. Kauder evaluated Trotter for DDS.[3] Tr. 166-171. He noted a history of auditory hallucinations, incarceration for an arson of Trotter's own residence that Trotter associated with voices telling him to do it, and Trotter's firing from numerous jobs apparently for unusual behaviors associated with his hallucinations. Id. Dr. Kauder assessed a GAF of 40-45 and noted Trotter "may be able to function somewhat adequately outside of the familiarity of his home environment for relatively short periods." Tr. 170.

In April 2003 evaluating psychiatrist Dr. Salbadour evaluated Trotter at the request of a state agency. Tr. 202-07. Dr. Salbadour assessed "schizophrenia vs. schizoaffective disorder" and "antisocial and schizotypal personality traits" with a history of drug and alcohol use, "non active by history." Tr. 204. Dr. Salbadour offered a "very guarded" prognosis. Id. In documenting Trotter's work history, Salbadour noted Trotter's longest job as being in the Army

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

for 18 months and that his wife reported that if he can stay in a job more than a month it is a miracle. Four months at a landscaping job in 1995 was his longest job outside the Army. His last job was two weeks. "In the summer of 2002 he was doing landscaping and as occurs with most of his jobs he begins doing the work of three people. but then gets 'contentious' and then gets paranoid and then begins feeling like 'they are talking about me' and ends up not being able to stay at the job site." Tr. 205.

**Reviewing Physician Dr. Hennings**

The ALJ's review of the medical record first noted opinions rendered by general physician Dr. Robertson, psychiatrists Drs. Salbadour and Dempsey, and Ph.D. psychology resident Dr. Kauder. Tr. 20-21. The ALJ subsequently cited the evaluation submitted by DDS reviewing psychologist Dr. Hennings:

> State Agency psychologist Bill Hennings, Ph.D. reviewed the written evidence and concluded that the claimant's mental impairments resulted in a mild limitation in activities of daily living (ADLs), moderate limitations in social functioning, and . . . mild limitations in maintaining concentration, persistence, and pace. Moreover, Dr. Hennings found there was insufficient evidence to determining if the claimant would experience repeated episodes of decompensation (Exhibit B3F) . . . the undersigned finds his opinion is consistent with the preponderance of the evidence and is entitled to great weight, since his opinion represents expert medical opinion by a non-examining source in accordance with Social Security Ruling 96-6p.

Tr. 22.

## II.    The ALJ's Step Four Findings

At step four, the ALJ, relying on a vocational expert (VE), found that Trotter's past

7 - FINDINGS AND RECOMMENDATION

relevant work included positions as a forest firefighter, "roofer/helper," "janitor/industrial," mill worker, and groundskeeper, and that an individual with Trotter's RFC could do such work. Tr. 23, Tr. 321.

Trotter challenges the ALJ's finding that these positions constitute past relevant work, since the ALJ failed to take into account that Plaintiff was never able to hold on to any of his past jobs for a length of time and that, in reality, they were unsuccessful work attempts.

The ALJ asked the VE to "start out by providing us with what you consider to be past relevant work" and the VE responded with the previously mentioned jobs. Tr. 321. However, the VE had asked Trotter at the hearing regarding his past relevant work and learned that he worked as a forestry firefighter for two weeks; a gas station attendant for 3-4 months; as a roofer for two to three months; janitorial work for a couple of months; millwork for two months, and assembling boxes for shipping, two days, groundskeeper for 5 weeks. Tr. 299-304.

The Commissioner acknowledges that Trotter's argument "would have merit if it were clear that his mental impairments precluded him from sustaining jobs for more than a few months at a time." Def. Brief, 11, citing Gatliff v. Comm'r, 172 F.3d 690, 692-94 (9th Cir. 1999). The record establishes only that Trotter reportedly performed eight short term jobs between 1984 and 2002. Tr. 85. This is generally analogous to the Gatliff discussion, which states that, "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." Gatliff, 172 F.3d at 694.

All things considered, this raises significant questions as to whether plaintiff's past job experiences are past relevant work that can support the ALJ's step four finding. Such situation,

8 - FINDINGS AND RECOMMENDATION

in addition to the lack of a step five finding and the ambiguity in the record related to this matter discussed below, indicate that a remand for further proceedings is appropriate.[4]

### III. The ALJ's Duty to Develop the Record

Trotter contends the ALJ erroneously failed to develop the record because he "failed to follow-up with Dr. Brad S. Kauder, Psy.D., as recommended by Jackson T. Dempsey, M.D., thereby failing in his duty under 20 C.F.R. § 426.912(e) to recontact medical sources." Pl. Opening Br. 11.

The ALJ requested a medical source statement from treating psychiatrist Dr. Dempsey on September 3, 2004. Tr. 248. The ALJ's request specifically indicated that Trotter's medical record does not clearly distinguish between the effects of his substance abuse and his psychiatric complaints. *Id.* The ALJ asked Dr. Dempesy to "please indicate for me what the current working diagnosis by you is in regard to Mr. Trotter's mental health matters," and asked that Dr. Dempsey "address any work capabilities or limitations related to his mental health issues." *Id.*

Dr. Dempsy responded that he had reviewed Trotter's Jackson County Mental Health treatment records and that,

> My current working diagnosis is a disorder in the schizophrenia spectrums, which is schizophrenia or schizoaffective disorder. With regard to the form you asked me to fill out, I do not think I am capable of filling that out at the present time. I do not know Mr. Trotter well enough to address these issues. He has had

---

[4]Defendant argues that if this court reverses, there should be a remand for further proceedings. Such is persuasive as the record has not been fully developed as discussed in the next section, disability is not clear, and there are outstanding issues that must be resolved before a determination of disability can be made.

9 - FINDINGS AND RECOMMENDATION

>  neurological testing in the past and I would suggest that Dr. Kauder
>  would be in a much better position to address these issues.

Tr. 246.

The ALJ's summary of this response concluded that Dr. Dempsey "refused to complete the medical source statement, stating that he did not know the claimant well enough and offered the vague diagnosis of "in the schizophrenia spectrum." Tr. 22.

20 C.F.R. § 416.912 (e) addresses evidence used to assess a claimant's disability application. It states:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine if you are disabled we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist . . . to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . .

20 C.F.R. § 416.912(e).

The ALJ has a duty to develop the record when ambiguities arise. Mayes v. Massinari, 276 F.3d 453, 459-60 (9th Cir. 2001). There is an ambiguity as to whether Trotter's mental impairments precluded him from sustaining jobs for more than a few months at a time. Dr. Dempsey did not feel capable of addressing any work capabilities or limitations related to Trotter's mental health issues and stated that Dr. Kauder would be in a much better position to address the issues. Dr. Kauder indicated earlier that Trotter could function outside his home for "relatively short periods." Dr. Kauder should be contacted to specifically address any work

10 - FINDINGS AND RECOMMENDATION

capabilities or limitations related to mental health issues. The ALJ should generally evaluate such information, should specifically reevaluate the step four findings, and, in light of any additional information obtained, should consider reevaluating lay witness testimony[5] and the weight given to the opinions of the various physicians.

## RECOMMENDATION

This action should be reversed and remanded for further proceedings pursuant to sentence 4 of 42 U.S.C. § 405(g).    Dr. Kauder should be contacted to specifically address any work capabilities or limitations related to mental health issues. The ALJ should generally evaluate the new information received from Dr. Kauder, should specifically reevaluate the step four findings, and, in light of any additional information obtained, should consider reevaluating lay witness testimony and the the weight given to the opinions of the various physicians.

Dated this 23 day of April, 2007.

Thomas M. Coffin
United States Magistrate Judge

---

[5]The lay witness testimony was rejected, in part, due to information contained in the record.

11 - FINDINGS AND RECOMMENDATION